UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSAN MARIA JESUS,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No.  14-cv-03820-JSC

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21 & 22

Plaintiff Susan Maria Jesus seeks social security benefits for the following severe impairments: spinal injury, thyroid condition, phybroid tumor, adenomysis, and complications following uterine surgery.  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim.  Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1]  (Dkt. Nos. 21 & 22)  After carefully considering the parties' submissions, the Court GRANTS IN PART Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.   The ALJ failed to identify sufficiently specific, clear and convincing reasons for discounting Plaintiff's pain testimony.

---

[1] Although Defendant's motion is not styled as a motion for summary judgment, in the body of the document Defendant seeks summary judgment.

United States District Court
Northern District of California

1

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## ADMINSTRATIVE RECORD

Plaintiff was born on August 23, 1957.  (Administrative Record ("AR") 80.)  She lives with her husband and has two adult children.  (AR 419.)  Plaintiff worked as a secretary prior to her alleged disability onset date of March 10, 2011.  (AR 52.)  She alleges disability on the basis of a spinal injury, a thyroid condition, a phybroid tumor, adenomyosis, and surgery on the uterus. (AR 80.)

On March 18, 2011, Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under title II and XVI of the Social Security Act.  (AR 195, 203.)  The application was denied initially and on reconsideration.  (AR 91, 143.)  On November 26, 2012, a hearing was held with an Administrative Law Judge ("ALJ") during which Plaintiff and vocational expert ("VE") Jeffrey Malmuth testified.  (AR 47-78.)  Following the hearing, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff

2

was not disabled.  (AR 13-23.)  Thereafter, the Appeals Council found no reason to review the

ALJ's determination, making the ALJ's decision final.  (AR 1-4.)  Plaintiff now brings this action

seeking review pursuant to 42 U.S.C. § 405(g).

## I.      MEDICAL EVIDENCE

In October of 2008, Plaintiff underwent surgery at Kaiser Permanente Hospital in

Hayward, CA to remove fibroids.  (AR 352.)  There were no complications with the surgery, but a

subsequent X-ray revealed minimal degenerative disc disease in her lumbar spine.  (AR 501.)

Two months later, Plaintiff had an MRI which showed that she suffered from mild degenerative

disk disease involving L3-L4 through L5-S1; small disk herniation with associated mild lift L4-L5

lateral recess stenosis; and mild facet arthropathy.  (AR 647.)  Thereafter, she had a bilateral facet

injection that had an anesthetic effect but not a steroid effect.  (AR 413.) As further treatment,

from July 28, 2010 to November 19, 2010, Plaintiff received chiropractic therapy from Dr. Ralph

Ortiz.  (AR 640-41.)

Plaintiff underwent a second surgery at Kaiser Permanente to remove her uterus and

fibroids on December 7, 2010.  (AR 387.)  Again, there were no complications with this surgery;

however, Plaintiff reported no improvement in lower back pain.[2]  (AR 413.)  Due to her pain,

Plaintiff's physician placed her on a modified work schedule for 11 days—allowing Plaintiff to

return to work full time on January 18, 2011.  (AR 339-41.)

Less than a month later, Plaintiff consulted with an orthopedic specialist, Dr. Luu.  (AR

413.)  Plaintiff reported her pain as 5-6 out of 10.  (AR 413.) On examination, Dr. Luu reported

that Plaintiff had no kyphosis, lower limb atrophy, or deformity.  (AR 415.)  In addition,

Plaintiff's range of lumbar motion was 100 percent with forward flexion and 75 percent in all

other directions.  (*Id.*)  Dr. Luu did not recommend surgery, but offered another facet injection

which Plaintiff declined, but she did agree to try a Lidoderm patch.  (AR 416.)  Dr. Luu extended

Plaintiff's modified work schedule for another four weeks and recommended that she take breaks

---

[2] Plaintiff testified that she received a second MRI in 2010 which revealed a worsening of her
back condition.  (AR 60.)  The actual MRI is absent from the medical record.  However, the record
does contain an email received by Plaintiff in 2012 from the "Laser Spine Institute," indicating
that MRI staff diagnosed Plaintiff with degenerative disc disorder.  (AR 637.)  While the ALJ
accepted the email as evidence, she rejected it as an acceptable medical source.  (AR 21.)

United States District Court
Northern District of California

to stretch every 45 minutes.  (*Id.*)

In March, Plaintiff returned to Kaiser Permanente to see her primary physician Dr. Hazra for a follow-up.  (AR 464-466.)  Dr. Hazra noted that Plaintiff was still experiencing chronic back pain, but refused to take pain medication because of her concerns regarding liver damage.  (*Id.*) Dr. Hazra recommended that Plaintiff take off work entirely for 43 days and referred her to an eight week chronic pain program (AR 464-67.)  Plaintiff attended these classes from April 2011 to August 2011, but did not complete the program because she developed vertigo.  (AR 524, 549.) During the time Plaintiff did attend the classes, her reports to her follow up doctors were inconsistent.  For example, on June 14, 2011, Plaintiff reported to Dr. Rajesh that she was experiencing good results and was highly functional.  (AR 536.)  However, on July 8, 2011, Plaintiff reported to Dr. Gillespie that she was not benefiting from the program and her pain levels were 7-9 out of 10.  (AR 553.)  At this time, Plaintiff also admitted that she believed her depression was returning.  (*Id.*)  Therefore, Dr. Gillespie referred Plaintiff to individual counseling for treatment of her depression.  (AR 554.)

On May 25, 2011, state agency physician Dr. Farah M. Rana examined Plaintiff in connection with her application for disability benefits.  (AR 425-427).  On examination, Dr. Rana noted that Plaintiff's back was mildly tender to touch and had a less than normal range of motion.[3] (AR 426.)  However, her straight leg test was normal.  (*Id.*)  Plaintiff reported that her pain limited her ability to vacuum, clean her tub, carry heavy groceries, and perform certain chores around the house.  (AR 425.)  In terms of Plaintiff's functional capacity, Dr. Rana opined:

> The claimant's ability to stand and walk in an eight-hour day is six hours with breaks.  She can sit for six hours with breaks in an eight-hour day.  She can handle, manipulate, feel and finer objects without any problems.  She would have some difficulty with frequent bending, squatting, kneeling, couching and climbing because of her chronic lower back pain, but she can do these activities on

---

[3] The ALJ characterized Dr. Rana's range of motion figures as less than normal.  (AR 20.) According to the Guides to the Evaluation of Permanent Impairment published by the American Medical Association, which is the source for joint motion measurement according to the Listing of Impairments § 1.00 (Musculoskeletal System), the values for Plaintiff's range of motion are less than normal.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(G).  *Compare* AR 426 (Plaintiff's lower back range of motion) *with* Robert D. Rondinelli, Guides to the Evaluation of Permanent Impairment, Table 16-12 (Am. Med. Ass'n 6th ed. 2008) (Lower Extremity Range of Motion Table).

4

occasional basis.  She does not need any assisted device.  She can take public transportation.

(AR 427.)

Based on medical records suggesting that Plaintiff had depressive disorder, Plaintiff was sent for a psychological evaluation with state agency consultative examiner Randy Kolin, Psy. D. (AR 418-23.)  Plaintiff characterized her mental health symptoms as "at times I feel depressed, if I am in pain, low back pain."  (AR 419.)  Dr. Kolin observed no behavioral abnormalities.  (AR 423.)  He indicated that Plaintiff was well groomed, independent for basic activities of daily living.  (AR 418.)  He further observed that she was able to handle complex tasks, handle money, walks, drive, shop for groceries, do light cleaning, and personally care for herself.  (AR 420.)  Dr. Kolin posited that her prognosis is fair.  (AR 423.)

Dr. Elizabeth Covey, Psy. D., a state agency medical consultant also submitted a functional report of Plaintiff's psychological functions.  (AR 621-623.)  Dr. Covey concluded that Plaintiff was capable of understanding and remembering simple instructions, carrying out short simple instructions, asking and responding to simple questions, and making plans independently.  (AR 623.)

The record also contains copies of three October 2012 prescriptions from Dr. Andrea Williams for Gabapentin (generic for Neurontin), Tramadol (an opiate pain reliever), and prescription strength ibuprofen.  (AR 320-322.)

## II.   PLAINTIFF'S ALJ HEARING

### A.  PLAINTIFF'S TESTIMONY

At the time of the hearing, Plaintiff had had lumbar spine pain for eight years.  (AR 54-55.) The pain manifests as an "intense pain in her back," which makes it very difficult for her to sit for a long period of time, as her whole left side locks up. (AR 55.)  The pain also makes it very difficult for her to sleep.  (*Id*.)   In 2011, Plaintiff was treating her pain with Motrin and Lidoderm patches, but they only helped a little.  (AR 62.)  Shortly after she failed to complete the Kaiser chronic pain program, Plaintiff left her position as a church secretary because the stress of working with her pain was too much.  (AR 55-56.)  Plaintiff then lost her health insurance and was unable to see a doctor from September 2011 through October 2012.  (AR 65-66.)

In October 2012, Plaintiff began seeing Dr. Andrea Williams at the Vasquez Health Center. (Id.) Dr. Williams prescribed Tramadol to help with her severe pain, but it makes her drowsy and dizzy so she only takes it at night. (AR 67.) During the day, Plaintiff has to take frequent breaks to lay down and rest and "[t]here's days I'm just totally no good." (AR 74.)

## B.  VOCATIONAL EXPERT TESTIMONY

Vocational Expert Jeffrey Malmuth testified that Plaintiff's past relevant work would have been that of a doctor's office receptionist and an administrative clerk. (AR 70.) The ALJ posited the following hypothetical:  An individual who is 53 at onset, currently 55, who attended school through the tenth grade and has the past relevant work referenced above, who is able to stand and walk for six hours in an eight hour day with breaks, and sit for six hours with breaks in an eight hour day; can carry 10 pounds frequently and 20 pounds occasionally; can push and pull devices up to 20 pounds; can handle, manipulate, feel and finger without difficulty; and would have difficulty with frequent bending, squatting, kneeling, crouching and climbing, but can do these activities on an occasional basis. (AR 70-71.) The VE testified that someone with those restrictions could perform the job of a doctor's office receptionist and an administrative clerk. (AR 71.) The VE added to this by stating that neither of the two jobs would require frequent non-exertional activity. (Id.)

Following the ALJ's hypothetical, Plaintiff's attorney presented the VE with an alternative hypothetical of an individual who has the ability to stand and sit for three hours in an eight-hour day; walk three hours in an eight-hour day; can only carry ten pounds at a time; precluded from bending squatting and kneeling, and would need to lie down and rest at least three times in a day for 30 minutes at a time. (AR 75-76.) The VE testified that such an individual would not be able to perform regular work just based the limitation of standing, walking, and standing for only three hours out of an eight-hour day—all other factors would be subsumed within that. (AR 76.) The VE further testified that the need to take two to three breaks of 30 minutes each would prevent her from performing her past relevant work or any work. (AR 77.)

United States District Court
Northern District of California

## C.  ALJ'S FINDINGS

The ALJ found Plaintiff not disabled using the five-step disability analysis.  (AR 13-23.)  At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 10, 2011.  (AR 15.)  At the second step, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine.  (AR 16.)  At the third step, the ALJ found that Plaintiff did not have impairments or a combination of impairments that met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including any mental health conditions.  (AR 17-18.)  At the fourth step, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the additional limitations of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours in an eight hour workday, occasionally bending, squatting, kneeling, crouching and climbing; siting for six hours in an eight-hour work day.  (AR 18.)  Thereafter, at the fifth step, the ALJ found that Plaintiff was capable of performing her past relevant work as a receptionist and an administrative clerk, and thus, not disabled.  (AR 22-23.)

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to deny benefits.  When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is "more than a mere scintilla, but may be less than a preponderance."  *Molina*, 674 F.3d at 1110-11 (internal citations and quotation marks omitted); *Andrews*, 53 F.3d at 1039.  To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted); *see also*

1   *Andrews*, 53 F.3d at 1039 ("To determine whether substantial evidence supports the ALJ's

2   decision, we review the administrative record as a whole, weighing both the evidence that supports

3   and that which detracts from the ALJ's conclusion.").

4          Determinations of credibility, resolution of conflicts in medical testimony and all other

5   ambiguities are roles reserved for the ALJ.  *See Andrews*, 53 F.3d at 1039; *Magallenes*, 881 F.2d

6   at 750.  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the

7   record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and

8   quotation marks omitted); *see also Batson v. Comm'r*, 359 F.3d 1190, 1198 (9th Cir. 2004)

9   ("When the evidence before the ALJ is subject to more than one rational interpretation, we must

10  defer to the ALJ's conclusion.").  "The court may not engage in second-guessing." *Tommasetti*,

11  533 F.3d at 1039.  "It is immaterial that the evidence would support a finding contrary to that

12  reached by the Commissioner; the Commissioner's determination as to a factual matter will stand

13  if supported by substantial evidence because it is the Commissioner's job, not the Court's, to

14  resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08–CV–00147, 2009 WL 3112321, at

15  *4 (E.D. Cal. Sept. 23, 2009).)

16                                    **DISCUSSION**

17         Plaintiff's sole contention on appeal is that the ALJ failed to provide a sufficient basis to

18  discredit her pain testimony, and thus failed to give sufficient weight to her pain testimony in

19  formulating her RFC.

20  **I.     The ALJ's Consideration of Plaintiff's Subjective Pain Testimony**

21         The SSA policy on determining RFC directs ALJs to give "[c]areful consideration ... to

22  any available information about symptoms because subjective descriptions may indicate more

23  severe limitations or restrictions than can be shown by medical evidence alone."  SSR 96–8p,

24  1996 WL 374184, at *5 (July 2, 1996).  If the record establishes the existence of an impairment

25  that could reasonably give rise to such symptoms, the "ALJ must make a finding as to the

26  credibility of the claimant's statements about the symptoms and their functional effect." *Robbins*

27  *v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Chaudhry v. Astrue*, 688 F.3d

28

United States District Court
Northern District of California

661, 670 (9th Cir. 2012) ("Because the RFC determination must take into account the claimant's testimony regarding his capability, the ALJ must assess that testimony in conjunction with the medical evidence.").

### A. The ALJ's Credibility Determination

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). An ALJ is not "required to believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's credibility is most commonly called into question where his or her complaint is about "disabling pain that cannot be objectively ascertained." *Orn*, 495 F.3d at 637. "In weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which [she] complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "To support a lack of credibility finding" about a claimant's subjective pain complaints, an ALJ must "point to specific facts which demonstrate that [the claimant] is in less pain than she claims." *Vasquez v. Astrue*, 572 F.3d 586, 591–92 (9th Cir. 2009) (internal citation and quotation omitted). In sum, where, as here, the ALJ does not find that a claimant was malingering, the ALJ is required to (1) specify which testimony the ALJ finds not credible, and (2) provide clear and convincing reasons supported by the record for rejecting the claimant's subjective. *See Brown-Hunter v. Colvin*, No. 13-15213, 2015 WL 4620123, at *1, 5 (9th Cir. Aug. 4, 2015); *Lingenfelter*, 504 F.3d at 1036.

1     Here, the ALJ found that Plaintiff's "medically determinable impairments could

2   reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements

3   concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the

4   extent they are inconsistent with the above residual functional capacity assessment." (AR 21.) The

5   ALJ explained: the "first and primary factor [she] considered to reach [her] conclusion [that

6   Plaintiff's statements regarding her pain were not credible] is the medical evidence." (AR 19.)

7   After summarizing the medical evidence at length, the ALJ found that Plaintiff "alleges pain and

8   dysfunction in excess of a level consistent with the objective clinical findings." (AR 21.)  The

9   ALJ then continued to evaluate Plaintiff's "allegations" in light of the following factors:

- Plaintiff described daily activities that are not as limited as one might expect for a disabled individual;
- Plaintiff stopped working in 2011, despite no clinical or laboratory findings suggesting a worsening condition since 2008; this discrepancy suggests she quit work for reasons other than her alleged disability;
- The longitudinal medical evidence and opinions indicate normal findings;
- Plaintiff's treatment has been routine and/or conservative;
- Records demonstrate that Plaintiff's symptoms are effectively controlled when she takes her prescribed medications;
- The medical records do not corroborate any adverse side effects from medication;
- In April 2011, Plaintiff revealed a fear of becoming totally disabled, which means that she was not totally disabled at that time;
- She requested only a one-month extension of her return to work date in August 2011, so she must have believed she would be fine in September 2011;
- She had not sought treatment for any disabling symptoms in over a year.

(AR 21.)  The ALJ therefore concluded:

> I find that objective clinical findings and laboratory results do not reveal a worsening condition, limited conservative treatment for back pain and the fact that no treating or evaluative physician found her to have a more restrictive residual functional capacity constitutes clear and convincing reasons for rejecting her allegations and testimony of excess symptoms and pain.

(AR 22.)

    While the ALJ identified a litany of reasons for rejecting Plaintiff's subjective pain

testimony, her decision suffers from three primary defects.  First, although the ALJ's adverse

credibility finding discussed the medical evidence at length, she failed to discuss Plaintiff's

United States District Court
Northern District of California

10

testimony regarding her pain or functional limitations at all.  Second, the ALJ failed to support her

other findings with specific examples from the record.  Third, the ALJ's reasoning as to certain

factors is circular rather than clear and convincing.

### 1)  The Failure to Identify Plaintiff's Specific Testimony

In *Brown-Hunter v. Colvin*, the Ninth Circuit recently held that where an ALJ made a

similar  "conclusory statement"—that Plaintiff's "statements concerning the intensity, persistence,

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment"—the ALJ was required to *specifically* identify

which of the plaintiff's statements she found incredible and why. The ALJ erred because she

found "based on unspecified claimant testimony and a summary of medical evidence, that 'the

functional limitations from claimant's impairment were less serious than she alleged.'" *Brown-*

*Hunter*, 2015 WL 4620123, at \*5; *see also Reddick v. Chater*, 137 F.3d 715, 722 (9th Cir. 1998)

("the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints") (internal quotation marks and citation omitted).

The ALJ here likewise failed to specifically identify which of Plaintiff's statements the

ALJ found incredible. While the ALJ summarized the medical findings at length, and concluded

that "the medical records indicate the claimant generally was highly functional," she completely

failed to discuss Plaintiff's testimony regarding her functional limitations, including her testimony

that she must lay down multiple times a day to rest (AR 73), that she can only sit for 45 minutes at

a time (AR 68), that she was recently prescribed pain medication which makes her so drowsy and

dizzy that she can only take it at night (AR 67),  and that some days she is "totally no good"  (AR

74).  Since the ALJ did not identify the specific testimony the ALJ found not credible, the ALJ's

rejection of Plaintiff's testimony was in error.

### 2)  The ALJ's Failure to Cite Specific Examples

As noted above, the ALJ cited numerous bases for her credibility finding here.  While

some of these examples could form the basis for an adverse credibility finding, they only do so if

"properly supported by the record [and] sufficiently specific to allow a reviewing court to

United States District Court
Northern District of California

1   conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

2   arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341,

3   345-46 (9th Cir. 1991) (internal citation and quotation marks omitted).  The Court cannot affirm

4   the ALJ's decision "based on evidence that the ALJ did not discuss"; rather, the Court is

5   "constrained to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th

6   Cir. 2003).  Because the ALJ failed to adequately support her findings here, including those

7   regarding Plaintiff's activities of daily living, her conservative treatment, and the lack of treatment

8   records the year preceding the hearing, the ALJ's reasoning is not supported by substantial

9   evidence.

10           First, although the ALJ found that "claimant's described daily activities are not so limited

11   as one might expect for a disabled individual," the ALJ did not cite to any examples in support of

12   this conclusion.  While Plaintiff did not testify regarding her activities of daily living, her function

13   report (cited elsewhere by the ALJ), indicated that she cannot sweep, vacuum, do any cleaning that

14   requires bending, she cannot cook as she did before because her back locks up, she can only walk

15   for 30-45 minutes before she needs to rest, and she can only sit for 45 minutes at a time.[4]  (AR

16   281-287.)  The ALJ failed to describe these or any other activities of daily living in concluding

17   that Plaintiff was not as limited as one might expect.

18           Second, as for Plaintiff having declined intervention and instead elected conservative

19   treatment, the ALJ cited one example; namely, that Plaintiff declined another facet injection (AR

20   20).  However, the treatment notes from that visit suggest that while Plaintiff declined an injection

21   "at this time," she elected a trial of the Lidoderm patch at that visit instead.  (AR 416.)   In the

22   follow-up visit a month later, she noted that the patches were providing "some relief" and agreed

23   to participate in the recommended chronic pain program. (AR 464, 467.)  Plaintiff thereafter

24

25   ───────────────

26   [4] Plaintiff's counsel before the ALJ did not elicit any testimony regarding Plaintiff's activities of daily living.  Notably, in December 2013—eleven months after the ALJ's decision and after her counsel filed an appeal brief on Plaintiff's behalf which states only that "recent MRI findings show significant objective findings which would support disability" (AR 9)—Plaintiff was notified that her counsel had been disqualified from representing claimants before the Social Security Administration.  (AR 5.)

27

28

United States District Court
Northern District of California

1    participated in the chronic pain program, but developed vertigo and was unable to continue.  (AR

2    571.)  The ALJ's decision fails to mention either that Plaintiff discussed trying the Lidoderm

3    patches with her primary care physician in lieu of another facet injection, or that Plaintiff stopped

4    attending the chronic pain classes because she developed vertigo.  The "ALJ may not cherry-pick

5    evidence to support the conclusion that a claimant is not disabled, but must consider the evidence

6    as a whole in making a reasoned disability determination." *Williams v. Colvin*, No. 14-2146, 2015

7    WL 4507174, at *6 (C.D. Cal. July 23, 2015); *see also Cotton v. Astrue*, 374 Fed.Appx. 769, 773

8    (9th Cir. 2010) ("ALJ's cherry-picking of [claimant's] histrionic personality out of her host of

9    other disorders is not a convincing basis for the adverse credibility finding.").

10            Third, although the ALJ correctly noted—albeit without record citations—that the medical

11   records do no corroborate any adverse side effects from medication, *see, e.g*., AR 536 (6/14/11

12   visit "denies any side effects); AR 571 (7/25/11 visit "denies any side effect")—the record does

13   not support the ALJ's related conclusion that Plaintiff's symptoms are effectively controlled when

14   she takes her prescribed medications.  Indeed, in July 2011, Plaintiff noted that her pain levels

15   were 7-9 out of 10 and she was feeling very depressed.  (AR 553.)  A few weeks later, Plaintiff

16   stated that her pain was 7 out of 10 with use of the Lidoderm patches and the Motrin 600 mg, and

17   she was given another four weeks off work to see if that helped.  (AR 571.)   Plaintiff thereafter

18   attempted to obtain a further extension of her disability and sought to participate in the level 3

19   chronic pain clinic, but she her lost Kaiser insurance when she did not return to work after her last

20   period of disability leave in August 2011.  (AR 63-64, 576-77, 584.)

21            Lastly, the Ninth Circuit has consistently held that when a claimant suffers from financial

22   hardships, a failure to obtain treatment is not a sufficient reason to deny benefits.  *See Orn v.

23   Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Orn's failure to receive medical treatment during the

24   period that he had no medical insurance cannot support an adverse credibility finding.  We have

25   held that an unexplained, or inadequately explained, failure to seek treatment may be the basis for

26   an adverse credibility finding unless one of a number of good reasons for not doing so applies.

27   But, disability benefits may not be denied because of the claimant's failure to obtain treatment he

28

United States District Court
Northern District of California

1   cannot obtain for lack of funds."). Plaintiff testified that she did not seek medical care between

2   September 2011 and October 2012 because she lacked health insurance. (AR 66.) The ALJ's

3   attempt to pass this off by noting that "[e]ven without medical insurance, she could have sought

4   treatment from emergency departments, community health centers, or charitable clinics" and her

5   failure to do so "reasonably indicates her symptoms are not as serious as alleged" was improper.

6   (AR 21-22.) *See Gamble v. Chater*, 68 F.3d 319, 320–22 (9th Cir. 1995) ("It flies in the face of

7   the patent purposes of the Social Security Act to deny benefits to someone because he is too poor

8   to obtain medical treatment that may help him."). The ALJ also neglected to consider that

9   Plaintiff recently began seeing Dr. Williams at the Vasquez Health Center and she was prescribed

10  Tramadol, an opiate pain reliever. (AR 66-67.) Finally, although the ALJ noted at the beginning

11  of the hearing that she would consider keeping the record open until after Plaintiff's upcoming

12  scheduled MRI, she issued her decision less than two weeks *before* the MRI was scheduled to take

13  place. (*Compare* AR 651 (MRI scheduled for January 16, 2013) *with* AR 23 (ALJ decision dated

14  January 3, 2013) *and* AR 51 ("I'm going to put the MRI schedule at 19-F. It's a long time to hold

15  the record open for, but I'll think about that as we go forward.").

16         Thus, the foregoing bases for rejecting Plaintiff's testimony are neither clear and

17  convincing nor supported by substantial evidence. *Bunnell*, 947 F.2d at 346-47 (emphasis added).

18         **3)  The ALJ's Circular Reasoning**

19         The remaining bases for the ALJ's adverse credibility finding are no more availing. First,

20  the ALJ concluded that the discrepancy between the absence of clinical evidence supporting any

21  worsening of Plaintiff's medical condition between 2008 and 2011 when she stopped work

22  "suggests she quit work for reasons other than her alleged disability." (AR 21.) This is the same

23  as saying that Plaintiff is not disabled because the medical evidence does not support her

24  subjective pain testimony, which is improper as discussed above. Second, the ALJ's conclusion

25  that because Plaintiff only "requested a one-month extension of her return to work date in August

26  2011, [this] suggests she believe she would be fine in September 2011" is illogical. (*Id*.) In fact,

27  Plaintiff had applied for permanent disability in March 2011, and had consistently obtained four to

28

United States District Court
Northern District of California

eight week extensions of her disability from her treating physicians thereafter.  (AR 466 (3/11/11 seven weeks); AR 486 (4/11/11 five weeks); AR 511 (5/13/11 five weeks); 529 (6/1/11 eight weeks); AR 571 (7/25/11 four weeks).)  Lastly, the Court fails to see how Plaintiff's statement in April 2011 that she was afraid of becoming totally disabled, supports a conclusion that Plaintiff "did not believe herself to be 'totally disabled' at that time." (AR 21.)  The ALJ cited to Plaintiff's functional report when reaching this conclusion; however, the use by Plaintiff—a lay person—of the term "totally disabled" is irrelevant to the determination of whether she is *disabled* under the law.  "Totally disabled" to Plaintiff could mean all sorts of things including a total inability to ambulate or take care of herself.  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.

      **4)**        **Summary**

    "Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."  *Brown-Hunter*, 2015 WL 4620123, at *6.  The Court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony."  *Id*.  The ALJ's failure to do so was legal error.

      Given that the ALJ's adverse credibility finding is legally unsupported and goes to the heart of the disability determination, the error cannot be said to be harmless.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned"); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir.

United States District Court<br>Northern District of California

2006) ("a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." ).

## II.  Scope of Remand

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d at 1020.  Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id*., and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595.)  Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Treichler*, 775 F.3d at 1106 ("a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony").

Because the record here creates serious doubts as to whether Plaintiff is in fact disabled, the Court need not reach the credit-as-true rule and must remand for further proceedings instead. Although the objective medical evidence is not a sufficient basis for rejecting Plaintiff's pain testimony entirely, Plaintiff's subjective reports of pain alone cannot support a disability finding in the absence of objective medical evidence supporting her functional limitations.  *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be

1   conclusive evidence of disability."); *Fair*, 885 F.2d at 603 ("An ALJ cannot be required to believe

2   every allegation of disabling pain, or else disability benefits would be available for the asking, a

3   result plainly contrary to 42 U.S.C. § 423(d)(5)(A).").

4                                      **CONCLUSION**

5           For the reasons stated above, the Court GRANTS IN PART Plaintiff's Motion for

6   Summary Judgment (Dkt. No. 21) and DENIES Defendant's Cross–Motion for Summary

7   Judgment (Dkt. No. 22). The Court VACATES the ALJ's final decision and REMANDS for

8   reconsideration consistent with this Order.

9           **IT IS SO ORDERED.**

10  Dated:  August 20, 2015

11                                      _____

12                                      JACQUELINE SCOTT CORLEY
                                        United States Magistrate Judge

17